FILED

2009 JUN 18 PM 2: 24

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Marc E. Hankin, Esq. (SBN: 170505)
Email: Marc@HankinPatentLaw.com
Kevin E. Schraven, Esq. (SBN: 259446)
Email: Kevin@HankinPatentLaw.com
**HANKIN PATENT LAW, APC**
6404 Wilshire Boulevard, Suite 1020
Los Angeles, CA 90048-5512
Telephone: (323) 944-0206
Facsimile: (323) 944-0209

Attorneys for Plaintiffs **MUNCHKIN, INC.** and **KIM LAUBE & COMPANY, INC.**

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

MUNCHKIN, INC., a Delaware corporation; and KIM LAUBE & COMPANY, INC., a California corporation,

    Plaintiffs,

v.

PORTERVISION, INC., f/k/a FURminator, Inc., a Missouri corporation; FURMINATOR, INC., f/k/a FM Acquisition Corp., an Indiana corporation; DAVID PORTER, an individual; ANGELA PORTER, an individual; and DOES 1 through 10, inclusive.

    Defendants.

Case No. CV09-4393 RSWL (SSx)

**COMPLAINT FOR:**

**(1) DECLARATORY JUDGMENT FOR PATENT INVALIDITY;**

**(2) DECLARATORY JUDGMENT FOR INEQUITABLE CONDUCT AND FRAUD ON THE USPTO;**

**(3) TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS;**

**(4) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

**(5) CIVIL CONSPIRACY;**

**(6) DEFAMATION PER SE;**

**(7) UNFAIR COMPETITION UNDER CAL. BUS & PROF CODE § 17200 *et seq.*;**

**(8) UNFAIR COMPETITION UNDER THE LANHAM ACT;**

**(9) DECLARATORY RELIEF FOR CORRECTION OF INVENTORSHIP;**

**DEMAND FOR JURY TRIAL.**

1    Plaintiffs Munchkin, Inc. ("Munchkin") and Kim Laube & Company, Inc.

2  ("Laube") (collectively "Plaintiffs") hereby allege against Defendants

3  PorterVision, Inc. f/k/a FURminator, Inc., FURMINATOR, Inc., f/k/a FM

4  Acquisition Corp., (PorterVision, Inc. and FURMINATOR, Inc. are collectively

5  referred to as "FURminator"), David Porter, Angela Porter (David Porter and

6  Angela Porter are collectively referred to as "the Porters") and Does 1-10

7  (collectively, the "FURminator Parties" or "Defendants") as follows:

8

9                    **SUBJECT MATTER JURISDICTION**

10    1.    This Court has subject matter jurisdiction over this entire action

11  pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.  Alternatively, jurisdiction

12  of this Court is predicated upon 28 U.S.C. § 1332(a)(1) on the basis of diversity

13  of citizenship.  Plaintiffs are citizens of California.  As detailed below, Plaintiffs

14  are informed and believe, and on that basis allege, that Defendants are citizens of

15  Missouri.  The amount in controversy exceeds $75,000, exclusive of interest and

16  costs.

17    2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391,

18  because a substantial part of the events or omissions giving rise to the claim

19  occurred in this judicial district where Munchkin and Laube are based.

20

21                           **INTRODUCTION**

22    3.    This lawsuit arises out of an abusive and unlawful scheme

23  perpetrated by the FURminator Parties to unfairly compete with Munchkin and

24  Laube.  Specifically, the FURminator Parties claim, in bad faith and with

25  knowledge that their patents are unenforceable and invalid, certain intellectual

26  property rights in an effort to illegally suppress or even destroy competition in the

27  pet grooming tool industry.

28

4.     Although the FURminator Parties have acknowledged that their "proprietary" pet grooming tool to de-shed pets – which is essentially a "blade on a stick" – has been around for decades and that there is ample prior art for such a tool, the Porters still deliberately chose to file fraudulent patent applications claiming inventorship of such a product with the United States Patent and Trademark Office ("USPTO").  Because the FURminator Parties failed to disclose relevant prior art in filing these patents, the patents subsequently issued. Immediately after the issuance of such patents, the FURminator Parties filed a number of meritless patent infringement lawsuits against their competitors to restrict competition.

5.     The FURminator Parties have brought actions against the vast majority of their competitors including, but not limited to, Ontel Products, Kim Laube & Company, Inc., Munchkin, Inc., and PetEdge, Inc.  Although these lawsuits have all resulted in either judgments of non-infringement or, in some instances, settlements, the FURminator Parties continue to persist in their quest to eliminate any competition.

6.     The FURminator Parties have threatened both Munchkin and Laube that, if they continue to sell their grooming tools, the FURminator Parties will relentlessly bring lawsuit after lawsuit in order to try to force these competitors out of business.  This is despite the fact that evidence of the invalidity and unenforceability of these patents was disclosed in prior lawsuits, two of which were against Munchkin and Laube.  Moreover, the FURminator Parties have harassed and continue to harass Munchkin's and Laube's customers such as PETCO from doing business with Munchkin or Laube by making untrue and disparaging remarks.

7.     Such willful disregard for Munchkin's and Laube's business relationships and reputation in the community and marketplace have resulted in, among other things, irreparable harm to Plaintiffs, monetary damages, and the

1  need for judicial intervention.  This Court should not countenance FURminator's

2  abusive and manipulative tactics.

3

4  ## PARTIES

5       8.    Plaintiff Munchkin is a Delaware corporation with its principal place

6  of business in Los Angeles, California.  Munchkin sells its pet products via its

7  Bamboo division.

8       9.    Plaintiff Laube is a California corporation with its principal place of

9  business in Los Angeles, California.

10      10.    Plaintiffs are informed and believe, and on that basis allege, that

11  Defendant PorterVision, Inc. f/k/a FURminator, Inc. is a Missouri corporation

12  with its principal place of business in St. Louis, Missouri.

13      11.    Plaintiffs are informed and believe, and on that basis allege, that

14  Defendant FURMINATOR, Inc., f/k/a FM Acquisition Corp. is an Indiana

15  corporation with its principal place of business at 1638 Headland Drive, Fenton,

16  Missouri 63026.

17      12.    Plaintiffs are informed and believe, and on that basis allege, that

18  Defendant David Porter is an individual residing in the State of Missouri.

19      13.    Plaintiffs are informed and believe, and on that basis allege, that

20  Defendant Angela Porter is an individual residing in the State of Missouri.

21      14.    The true names and capacities, whether individual, corporate,

22  associate or otherwise, of the Defendants sued herein under Federal Rule of Civil

23  Procedure 19 and Central District Local Rule 19-1, as Does 1 through 10,

24  inclusive are unknown to Plaintiffs, who therefore sue said Defendants by such

25  fictitious names.  Plaintiffs will amend this complaint to insert the true names and

26  capacities of said Defendants when the same have been ascertained.  Each of the

27  Defendants designated herein as a "Doe" is legally responsible in some manner for

28  the wrongdoing alleged herein.

1     15.     Plaintiffs are informed and believe, and on that basis allege, except as

2  otherwise indicated, all Defendants, including the fictitious Doe Defendants, were

3  at all times acting as agents, servants, conspirators, ostensible agents, employees,

4  hirelings, partners, alter ego, joint venturers, and/or co-venturers of each other

5  Defendant and that at all relevant times, each was acting for a common purpose or

6  benefit, so that each Defendant is responsible for the events described herein and

7  is therefore jointly and severally liable for the resulting damages.

8     16.     Plaintiffs are informed and believe, and on that basis allege, that

9  each Defendant conspired with one or more of the other Defendants to achieve

10 the wrongful and unlawful results alleged herein, so that each Defendant should

11 be held jointly and severally liable for all damages resulting from the conspiracy.

12

13 **GENERAL ALLEGATIONS**

14 **THE FURMINATOR PARTIES' WRONGFUL CONDUCT**

15     17.     This action arises from an unlawful scheme, orchestrated by the

16 FURminator Parties to unfairly compete with Plaintiffs in the pet grooming tool

17 business.  Defendants have admittedly failed to patent a new and novel idea for a

18 tool which is nothing more than a "blade on a stick," yet they have illegally

19 claimed inventorship of such a pet de-shedding tool for their own benefit and

20 profit, and to the detriment of Plaintiffs and other competitors in the marketplace.

21     18.     Perhaps even worse than such deception and fraud is the FURminator

22 Parties' pattern and practice of bringing baseless lawsuits for patent infringement

23 against their competitors.  Then, when challenged on the validity and

24 enforceability of their patents vis a vis counterclaims, the FURminator Parties

25 engage in their modus operandi of immediately seeking to dismiss the lawsuit with

26 a covenant not to sue on that particular patent – only to later file another lawsuit

27 against the same competitor under a different patent for the same product.

28

1    19.    These lawsuits are used by the FURminator Parties to quash

2  competition by greatly increasing business costs through expensive, long, drawn-

3  out litigation, which is both a resource and money drain for the FURminator

4  Parties' competitors.

5

6                                **BACKGROUND**

7    20.    Munchkin, Inc. was founded in 1991, and is a market-leading

8  designer, developer, manufacturer and distributor of baby care products.

9  Munchkin's success is attributable to the company's keen ability to transform

10  ordinary products into extraordinary ones using a unique combination of design,

11  innovation, and concern for safety.

12    21.    Munchkin's critical success has led to its position as a leading

13  company in the baby care products industry.  Munchkin currently holds 29

14  industry awards and has been granted over 50 United States Patents.

15    22.    In 2002, Munchkin launched its pet care division entitled Bamboo.

16  Bamboo also prides itself on applying the same combination of innovation and

17  design originality to pet products, which led to Munchkin's market leadership and

18  position in the baby care arena.

19    23.    Like the Munchkin brand, Bamboo has a distinctive brand image.  In

20  fact, Munchkin utilized an international branding/design firm to help develop a

21  unique look for Bamboo.  Bamboo believes that its brand image is very important,

22  because consumers want a single trustworthy source for all of their pet care needs.

23    24.    Munchkin, through the Bamboo line, has an entire grooming line for

24  pets, including several de-shedding products, such as a de-shedding comb and the

25  FurBuster – a de-shedding tool with an elongate handle portion.

26    25.    Plaintiff Kim Laube & Company, Inc. is a leading manufacturer of

27  pet grooming products including, but not limited to, electric clippers, scissors, nail

28  grinders, and de-shedding tools.  Laube has been serving the pet grooming

1   industry for over 30 years in a wide variety of areas.

2        26.    Kim Laube, the owner and founder of Laube, is the named inventor

3   on nine issued United States Patents related to grooming tools, and Kim Laube has

4   designed numerous products for other manufacturers.

5        27.    David and Angela Porters are the founders of FURminator.

6        28.    Angela Porter (formerly Angela Mueller) owned a pet grooming

7   business in the 1990s, and, together with her husband, formed FURminator in

8   2002.

9        29.    Prior to the formation of FURminator, David Porter had no

10  involvement in the pet grooming industry, but instead worked in advertising and

11  marketing.

12       30.    On or around September 10, 2008, the Porters sold FURminator to an

13  independent equity firm for an amount estimated to exceed $50 million dollars.

14  The Porters remained as minority shareholders of FURminator.

15

16               **DEFENDANTS' WRONGFUL CONDUCT**

17       31.    For decades, pet groomers have engaged in a method for grooming

18  their pets known as "carding."  Carding is the process of removing dead, loose

19  hair and excess undercoat from a pet's (such as a horse, dog or cat) hair by

20  dragging a carding tool (like a stripping knife) lightly through a pet's coat, much

21  like using a rake to gather up dead leaves from a lawn.

22       32.    Groomers have used a variety of tools to card or de-shed pets

23  including, but not limited to, Pearson stripping knives, Mars stripping knives,

24  Classic stripping knives, Hauptner stripping knives, a number of hand-made

25  stripping knives, numerous sizes of clipper blades and a wide variety of thinning

26  shears.  In addition to these tools, one of the most often used carding or de-

27  shedding tool is the combination of the head piece of an old Oster Model A-2

28  clipper and an Oster comb blade with the clipper piece or cutting blade removed.

1    33.    Despite knowing about this common knowledge in the pet grooming

2  industry, the Porters filed for several patents for a "pet grooming tool" and/or "pet

3  grooming tool and method for removing loose hair from a furry pet."  These

4  patents have been referred to by the FURminator Parties as the "FURminator

5  Family of Patents."  Among the FURminator Family of Patents for the pet

6  grooming tool known as the "FURminator" are United States Patent Nos.

7  6,782,846 (the '846 Patent), 7,077,076 (the '076 Patent), 7,222,588 (the '588

8  Patent), 7,334,540 (the '540 Patent), and 7,509,926 (the '926 Patent).  These

9  Patents are all continuations of the '846 Patent and, therefore, the content of each

10  of these Patents is *identical* in all critical respects.

## DEFENDANTS' LITIGATION HISTORY

13    34.    FURminator has, since its inception, demonstrated a propensity for

14  litigation and instituted a number of meritless lawsuits against its competitors

15  alleging patent and trademark infringement.  These lawsuits have all been filed for

16  the sole purpose of illegally restraining competition in the pet grooming tool

17  industry.  Two of these lawsuits have been against Munchkin and two of them

18  against Laube.

## FURminator v. Munchkin

21    35.    In January 2006, FURminator filed a lawsuit against Ontel Products,

22  Inc. ("Ontel") and Munchkin in the United States District Court for the Eastern

23  District of Missouri entitled FURminator, Inc. v. Ontel Prods. Corp. et al., Case

24  No. 4:06 CV 00023 CAS ("FUR I").  In that case, FURminator alleged that

25  Munchkin and Ontel had infringed the '846 Patent and a purported trademark on

26  the word "deshedding."  Specifically, FURminator sued Munchkin for patent

27  infringement based on Munchkin's sales of a de-shedding comb.

28    36.    FURminator sought a preliminary injunction against both Ontel and

1    Munchkin, which the court denied in a published opinion.  (See FURminator, Inc.

2    v. Ontel Prods. Corp. et al., 429 F. Supp. 2d 1153 (E.D. Mo. 2006).

3         37.    Specifically, the FUR I court found that the Porters falsely claimed to

4    have coined the word "deshedding," since that word had been in use in the pet

5    grooming industry for decades prior to FURminator's claimed creation and thus

6    the purported trademark was "generic."

7         38.    Finally, on June 16, 2009, the U.S. Patent and Trademark Office

8    issued a Notice of Abandonment, effective May 19, 2009, after FURminator was

9    unable to persuade the Trademark Examining Attorney that "deshedding" was

10   anything other than generic and, therefore, incapable of serving as a trademark.

11        39.    Additionally, the FUR I court found that the accused products made

12   by Ontel and Munchkin did not infringe the asserted claims of the asserted patent,

13   and thus there was no likelihood that FURminator would prevail on the merits of

14   its patent infringement claim.

15        40.    The FUR I court further noted that, while Munchkin and Ontel had

16   submitted evidence of prior art to the '846 Patent as to the invalidity and

17   unenforceability of that patent, the FUR I court need not reach such issues at that

18   time.

19        41.    FURminator then appealed the ruling to the Federal Circuit, which

20   affirmed the FUR I court's ruling in favor of Munchkin and Ontel.  (See

21   FURminator, Inc. v. Ontel Prods. Corp. et al., 214 Fed. Appx. 982, 2007 WL

22   200938 (Fed. Cir. Jan. 16, 2007).

23        42.    Following the Federal Circuit's ruling, Munchkin moved for

24   summary judgment of invalidity of all claims of the '846 Patent.  In connection

25   with its summary judgment motion, Munchkin submitted clear and convincing

26   evidence of prior public uses of a grooming tool that embodied all of the elements

27   of the broadest claims of the '846 Patent, and had been used to perform the

28   methods claimed in the patent for years prior to the application for the '846 Patent.

43.    Rather than defending against such motion, in March 2007, FURminator moved to dismiss all of its claims against Munchkin and covenanted not to sue Munchkin for any or the products Munchkin had offered for sale on its website (www.bamboopet.com) prior to that date.

44.    Munchkin opposed FURminator's motion to dismiss on various grounds, including that the Porters had threatened Steven Dunn, Munchkin's Chief Executive Officer, with litigation under additional patents on February 22, 2007 and that Munchkin had informed FURminator in a letter dated February 22, 2007 that it intended to sell a grooming device with an elongate handle portion (the "FurBuster") in the near future.

45.    Additionally, Munchkin moved to amend its counterclaims to add counts related to the invalidity and unenforceability of the '076 Patent – the only other issued patent that FURminator had at that time – based on the threats made by the Porters.

46.    The FUR I court dismissed the action based on the covenant not to sue on the '846 Patent and opted not to decide Munchkin's summary judgment of invalidity.  The FUR I court, however, stated in its order that "if plaintiff [FURminator] files a new action in this Court claiming patent and/or trademark infringement by Bamboo and/or Munchkin, Inc. of the '846 patent or the term "deshedding" in connection with the products identified in the covenant not to sue, plaintiff [FURminator] shall pay defendants' [Bamboo and Munchkin] reasonable attorneys' fees and costs incurred in defending this action."

47.    Despite the FUR I court's strong admonitions, in February 2008, immediately upon issuance of the '540 Patent (a continuation of the '846 Patent), the FURminator Parties filed another lawsuit against Munchkin and Laube in the United States District Court for the Eastern District of Texas, Marshall Division – a notoriously plaintiff-friendly forum for patent infringement actions.  That lawsuit was subsequently moved to the Eastern District of Missouri – where

1   FURminator had previously covenanted not to sue Munchkin on the '846 Patent.

2   That lawsuit is currently pending, and has a trial date of February 16, 2010.

3

4                                   **FURminator v. Laube**

5          48.    In August 2006, while FURminator's appeal in FUR I (the first case

6   against Munchkin) was pending, the FURminator Parties filed two additional

7   patent infringement lawsuits – a second action against Ontel titled <u>FURminator,</u>

8   <u>Inc. v. Ontel Prods. Corp.</u>, Case No 4:06 CV 1294 CAS ("FUR II") alleging

9   infringement of the '076 Patent and an action against Laube titled <u>FURminator,</u>

10  <u>Inc., v. Kim Laube & Co., Inc.</u>, Case No. 4:06 CV 1314 RWS ("FUR III")

11  alleging infringement of both the '846 and '076 Patents.

12         49.    In the FUR II case, FURminator again sought a preliminary

13  injunction against Ontel, but withdrew that motion on the eve of the hearing after

14  Ontel produced clear and convincing evidence of prior art and public uses of the

15  grooming tools that disclosed all of the elements of the broadest claims of the '076

16  Patent.  FURminator then settled all of its asserted claims against Ontel in both the

17  FUR I and FUR II cases.

18         50.    In the FUR III case, after the parties had fully briefed their claim

19  construction positions and Laube had disclosed voluminous preliminary invalidity

20  contentions, FURminator, consistent with its modus operandi, announced its

21  intention to provide Laube with a covenant not to sue under the '846 and '076

22  Patents at a prehearing conference just days before the scheduled *Markman*

23  hearing.

24         51.    Despite Laube's objections, the FUR III court granted FURminator's

25  motion to dismiss Laube's counterclaims based on the covenant not to sue.  As in

26  the FUR I case, the FUR III court held that "if FURminator files a new action

27  against Kim Laube Company, Inc. claiming infringement of Patent Nos. '846 or

28  '076, FURminator shall pay Laube's reasonable fees and costs incurred in

1 | defending the present action."

2 | 52.     Again, despite the FUR III court's admonitions, which echoed those

3 | of the FUR I court, the FURminator Parties filed their second lawsuit against

4 | Munchkin and Laube approximately one month after FURminator had issued a

5 | covenant not to sue Laube and the same date that the '540 Patent issued.  That

6 | lawsuit entitled FURminator, Inc. v. Munchkin, Inc. and Kim Laube & Co., Inc.,

7 | Case No 4:06 CV 00367 RWS ("FUR IV") is currently pending and has been on-

8 | going for nearly a year and a half and, as set forth above, is scheduled to go to trial

9 | on February 16, 2010.

## FURMINATOR PARTIES' CONTINUING THREATS

53.     FURminator has continuously issued covenants not to sue on the patent(s) that is/are the subject of current litigation, yet the FURminator Parties soon thereafter file new lawsuits in an unveiled attempt to quash competition based on a new, invalid, patent that issued as a continuation of the original, invalid, patent.

54.     Additionally, the FURminator Parties have threatened – and continue to threaten – Steven Dunn, the Chief Executive Officer of Munchkin, and Kim Laube, the Chief Executive Officer of Laube, that FURminator will continue to file lawsuits against Munchkin and Laube on any and all issued patents – all for the same products on which covenants not to sue had previously been tendered. Thus, unless and until the issues of validity and enforceability have been decided once and for all, the FURminator Parties have admittedly refused to allow for a free market and have instead sought to suppress or even destroy any competition.

55.     Plaintiffs are informed and believe, and on that basis allege, that unless this Court issues a Declaratory Judgment regarding the validity and enforceability of the FURminator Family of Patents, this type of abusive behavior will continue to run unchecked.

56.     Further, Plaintiffs are informed and believe, and on that basis allege, that the FURminator Parties are using these lawsuits to compete unfairly against Munchkin and Laube, and to interfere with Munchkin's and Laube's current and prospective economic relationships.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment for Patent Invalidity)

57.     Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

58.     More than one year prior to the filing of the earliest patent application for any of the patents in the FURminator Family of Patents, there appeared prior art, patents, publications, and products describing apparatuses and methods for grooming pets, and specifically for removing the loose hair from pets while not removing the non-loose hair including, but not limited to, stripping knives and so called "40-blades" used with paintbrush handles or with tape formed as a grip.

59.     More than one year prior to the filing of the earliest patent application for any of the patents in the FURminator Family of Patents, and prior to any purported invention made by David and/or Angela Porter that is claimed or described in any related patents, the prior art described apparatuses and methods for grooming pets, and specifically for removing the loose hair from pets while not removing the non-loose hair including, but not limited to, devices comprised of an Oster A5 40 blade, or its equivalent, attached to an elongate handle, such as a paint brush handle, or used with tape wrapped around one part of the blade to form a grip.

60.     At some point in time after the patenting, sale, or public use of the prior art described above, the Porters, the named inventors of the FURminator Family of Patents, attempted to develop and patent the same or similar pet grooming tools.

61.   The pet grooming tools and methods of use that the Porters ultimately patented were conceived of and publicly disclosed and used by others prior to the filing of the earliest patent application for any of the patents in the FURminator Family of Patents, and at least one of the Porters was present at least one of the times when at least one of those public disclosures occurred.

62.   Each of the claims set forth in the claims of the patents listed in the FURminator Family of Patents – the '846 Patent, the '076 Patent, the '588 Patent, the '540 Patent, and the '926 Patent – are invalid because they are anticipated by the pertinent prior art under 35 U.S.C. § 102, would have been obvious to one of ordinary skill in light of the pertinent prior art at the time of the claimed invention under 35 U.S.C. § 103, and for improper inventorship under 35 U.S.C. § 116.

63.   The claims of the patents listed in the FURminator Family of Patents are also invalid for lack of enablement, insufficient written description, and failure to disclose the best mode of invention under 35 U.S.C. § 112 in that the claims of the patents listed in the FURminator Family of Patents incorporate methods and limitations that are neither disclosed, described in, explained by, nor enabled by the specifications of the patents listed in the FURminator Family of Patents.

64.   There is a justiciable controversy between the parties regarding the invalidity of the FURminator Family of Patents, and thus Munchkin and Laube are entitled to a declaratory judgment that will finally resolve these issues.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment for Inequitable Conduct and Fraud on the U.S. Patent and Trademark Office)

65.   Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

66.   The FURminator Parties and their agents engaged in inequitable conduct by intentionally omitting material information from, or submitting false

1  conduct by intentionally omitting material information from, or submitting false

2  and misleading information to, the USPTO in the course of obtaining each of the

3  patents in the FURminator Family of Patents.

4      67.    The FURminator Parties and their agents intended to mislead and

5  materially misled the Patent Examiner by intentionally withholding relevant and

6  material information. Plaintiffs are informed and believe, and on that basis allege,

7  that had the Patent Examiner been advised of the withheld material information,

8  the Patent Examiner would have rejected some or all of the claims in the patents

9  that comprise the FURminator Family of Patents.

10      68.    Specifically, the Porters knew, during the time of the prosecution of

11  each of the patents that comprise the FURminator Family of Patents, that the

12  process known as "carding" had been a common practice among pet groomers for

13  decades. The Porters further knew that stripping knives had been in public use by

14  groomers for more than a year prior to the filing of the earliest patent application

15  for any of the patents in the FURminator Family of Patents.

16      69.    The FURminator Parties and their attorneys failed to disclose the

17  existence of stripping knives, and the fact that stripping knives were in public use

18  to perform carding, to the Patent Examiner during the examination process of the

19  '846 Patent – the earliest in the series of patent applications for the FURminator

20  Family of Patents.

21      70.    Instead, the FURminator Parties remained silent about stripping

22  knives while the Patent Examiner was relying on prior art that was clearly less

23  relevant than stripping knives (including the Deneen patent, which was for cutting

24  human hair – not grooming pets – and has a razor blade that cut rather than pulled

25  hair).

26      71.    The FURminator Parties were also aware of a prior art U.S. Design

27  Patent relating to a Bowsprit™ brand stripping knife during the prosecution of the

28  '846 Patent – the earliest in the series of patents in the FURminator Family of

Patents, but failed to disclose that prior art, as well. David Porter, one of the named inventors of the patents in the FURminator Family of Patents, discovered this U.S. Design Patent relating to a Bowsprit™ brand stripping knife during an Internet patent search, but failed to disclose it to the USPTO, despite knowing of its relevance, and David Porter knew, or should have known, that the Bowsprit™ brand stripping knife would be material to the patentability of the Porters' pending patent application.

72.     During the prosecution of each of the patents in the FURminator Family of Patents, the FURminator Parties knowingly withheld and failed to disclose to the USPTO certain information that they knew was material. Such information included, but is not limited to, prior art references and pleadings from other lawsuits that relate to the invalidity and unenforceability of the claims of the patents in the FURminator Family of Patents.  Such failure to disclose this relevant information is a clear violation of the FURminator Parties and their agents' duty of candor and duty to disclose to the USPTO all material information.

73.     The FURminator Parties knowingly failed to disclose and/or concealed material information from the USPTO with the intent to deceive the USPTO into issuing the patents that comprise the FURminator Family of Patents.

74.     In light of the inequitable conduct of the FURminator Parties and their agents before the USPTO, all of the claims of the patents that comprise the FURminator Family of Patents are invalid as a matter of law and unenforceable under the equitable doctrines of unclean hands and fraud on the USPTO.

75.     There is a justiciable controversy between the parties regarding the FURminator Parties' inequitable conduct, unclean hands, and the unenforceability of the FURminator Family of Patents, and thus Munchkin and Laube are entitled to a declaratory judgment that will finally resolve these issues.

## THIRD CLAIM FOR RELIEF

### (Tortious Interference with Economic Relations)

76.  Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

77.  Valid written or oral contracts existed between Plaintiffs, on the one hand, and their customers, on the other hand, to sell Munchkin's and Laube's products including, but not limited to, their pet grooming tools.

78.  As a direct competitor in this niche market, Plaintiffs are informed and believe, and on that basis allege, that the FURminator Parties were aware of these relationships.

79.  Plaintiffs are informed and believe, and on that basis allege, that Defendants intentionally engaged in acts, omissions, or conduct that they knew would have the natural or probable effect of interfering with or disrupting the contracts of which they had knowledge.  Plaintiffs are informed and believe, and on that basis allege, that Defendants intended to cause such interference or disruption.

80.  The FURminator Parties interfered with these economic relationships in an attempt to gain a competitive advantage and with the malicious intent to cause harm to Plaintiffs.

81.  The economic relationships between Plaintiffs and their customers were actually disrupted and Plaintiffs were harmed.

82.  As a proximate result of Defendants' acts, omissions, or conduct, Plaintiffs have suffered injury to their businesses, including but not limited to, monetary injury in an amount to be proven at trial, but in excess of the minimum jurisdictional requirements of this Court.

83.  Plaintiffs are informed and believe, and on that basis allege, that Defendants acted with oppression, fraud, or malice, so as to justify the imposition of punitive and exemplary damages.

## FOURTH CLAIM FOR RELIEF

### (Tortious Interference with Prospective Economic Advantage)

84.     Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

85.     Economic relationships existed between Plaintiffs, on the one hand, and on the other hand, their customers and vendors, and Plaintiffs had a reasonable belief that such relationships would continue for the foreseeable future.

86.     Plaintiffs are informed and believe, and on that basis allege, that the FURminator Parties knew of the existence of these relationships.

87.     The FURminator Parties engaged in wrongful acts or conduct that they knew would have the natural or probable effect of interfering with or disrupting these relationships.  Plaintiffs are informed and believe, and on that basis allege, that Defendants intended to cause such interference or disruption.

88.     Plaintiffs' economic relationships with their customers and vendors were actually interfered with or disrupted.

89.     As a proximate result of Defendants' acts, omissions, or conduct, Plaintiffs have suffered injury to their business, including but not limited to, monetary injury in an amount to be proven at trial, but in excess of the minimum jurisdictional requirements of this Court.

90.     Plaintiffs are informed and believe, and on that basis allege, that Defendants acted with oppression, fraud, or malice, so as to justify the imposition of punitive and exemplary damages.

## FIFTH CLAIM FOR RELIEF

### (Civil Conspiracy)

91.     Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

92.     Plaintiffs are informed and believe, and on that basis allege, that Defendants agreed between and among themselves to perform the wrongful acts and omissions alleged above and intended to perform those acts or omissions or to aid the other Defendants in infringing Plaintiffs' rights.

93.     As a proximate result of Defendants' acts, omissions, or conduct, Plaintiffs have suffered injury to their business, including but not limited to, monetary injury in an amount to be proven at trial, but in excess of the minimum jurisdictional requirements of this Court.

94.     Plaintiffs are informed and believe, and on that basis allege, that Defendants acted with oppression, fraud, or malice, so as to justify the imposition of punitive and exemplary damages.

## SIXTH CLAIM FOR RELIEF
### (Defamation Per Se)

95.     Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

96.     The FURminator Parties, in their written and verbal communications with various customers and potential customers of Plaintiffs, stated that Munchkin and Laube infringe on valid and enforceable patent rights owned by FURminator.

97.     At the time the FURminator Parties made these statements, they knew that they were false and continue to be false.  Such statements were made by the FURminator Parties to such third parties, either in writing or verbally, with the malicious intent to injure Plaintiffs' businesses.  Additionally, such statements were made without justification or excuse, without any reasonable basis in law or fact, and with knowledge of their falsity.

98.     As a proximate result of Defendants' acts, omissions, or conduct, Plaintiffs have suffered injury to their business, including but not limited to,

1  monetary injury in an amount to be proven at trial, but in excess of the minimum

2  jurisdictional requirements of this Court.

3      99.    In addition, as a proximate result of the false statements made by the

4  FURminator Parties, Plaintiffs have suffered irreparable harm and damage to their

5  reputation in the marketplace rending these statements defamatory per se such that

6  Plaintiffs are entitled to punitive and exemplary damages.

7

8  **SEVENTH CLAIM FOR RELIEF**

9  **(Unfair Competition under California Business and Professions Code**

10  **§ 17200 *et seq.*)**

11      100.   Plaintiffs re-allege and incorporate herein by reference all preceding

12  paragraphs as though fully set forth herein.

13      101.   By engaging in the wrongful acts alleged above, Defendants have

14  engaged in unlawful, unfair, or fraudulent business acts or practices, as defined by

15  California Business and Professions Code § 17200 *et seq.*

16      102.   Defendants have been unjustly enriched by their unlawful, unfair, or

17  fraudulent business acts or practices, and Plaintiffs will suffer injury including, but

18  not limited to, monetary injury to their businesses as a direct and proximate result

19  of those acts or practices, in an amount to be proven at trial, but in excess of the

20  minimum jurisdictional requirements of this Court.

21      103.   Plaintiffs are informed and believe, and on that basis allege that,

22  unless restrained and enjoined by this Court, Defendants will continue to engage

23  in the wrongful acts alleged above and cause further irreparable harm for which

24  Plaintiffs have no adequate remedy at law.

25      104.   Plaintiffs seek an appropriate order of this Court requiring that

26  Defendants, jointly and severally, make restitution by restoring to Plaintiffs all of

27  the monies paid to Defendants and to disgorge all of the profits derived by

28  Defendants through the use of the unlawful, unfair, and fraudulent business

practices described herein, as provided for by California Business and Professions Code § 17203.

### EIGHTH CLAIM FOR RELIEF

**(Unfair Competition under the Lanham Act)**

105.    Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

106.    By engaging in the wrongful acts alleged above, Defendants have engaged in unfair competition, as defined pursuant to the Lanham Act, 15 U.S.C. § 1125.

107.    The FURminator Parties have made false and misleading statements to Plaintiffs' customers and potential customers in order to promote their products and disparage Plaintiffs' products.  Specifically, the FURminator Parties have made false and misleading statements that Munchkin and Laube infringe valid and enforceable patents owned by FURminator.

108.    Such false and misleading statements have actually deceived, or are likely to deceive, a substantial segment of the intended audience – Munchkin's and Laube's customers and potential customers.  Moreover, such statements are material because they have influenced, or are reasonably likely to influence, the purchasing decisions of Plaintiffs' customers and the potential customers of Munchkin's and Laube's pet grooming tools.

109.    The FURminator Parties have caused the false and misleading statements to enter interstate commerce.

110.    The statements made by the FURminator Parties have resulted in actual or probable injury to Plaintiffs and were undertaken in bad faith, as the FURminator Parties have knowledge that none of Plaintiffs' products infringe on any valid or enforceable claims of any of the patents in the FURminator Family of Patents.

1    111.   As a proximate result of Defendants' acts, omissions, or conduct,

2   Plaintiffs have suffered injury to their business, including but not limited to,

3   monetary injury in an amount to be proven at trial, but in excess of the minimum

4   jurisdictional requirements of this Court.

5    112.   Plaintiffs are informed and believe, and on that basis allege that

6   unless restrained and enjoined by this Court, Defendants will continue to engage

7   in the wrongful acts alleged above and cause further irreparable harm for which

8   Plaintiffs have no adequate remedy at law, in addition to causing Plaintiffs to

9   suffer lost profits, lost sales, and to incur attorneys' fees, court costs, and

10   expenses.

11

12                          **NINTH CLAIM FOR RELIEF**

13               **(Declaratory Relief for Correction of Inventorship)**

14    113.   Plaintiffs re-allege and incorporate herein by reference all preceding

15   paragraphs as though fully set forth herein.

16    114.   An actual controversy has arisen and now exists between Plaintiff

17   Laube, on the one hand, and Defendants Porters, on the other hand, with respect to

18   United States Patent Nos. 6,782,846 (the '846 Patent), 7,077,076 (the '076 Patent),

19   7,222,588 (the '588 Patent), 7,334,540 (the '540 Patent), and 7,509,926 (the '926

20   Patent).  Laube disputes the claim of inventorship and ownership by the Porters of

21   such patents and requests that the Court resolve the issues of inventorship and

22   ownership.  Plaintiffs are informed and believe, and on that basis allege, that

23   Defendants dispute these contentions.

24    115.   A judicial determination and declaration is necessary and appropriate

25   at this time and under these circumstances so that Plaintiffs may ascertain their

26   rights of ownership, inventorship, and duties with respect to said patents.

27    116.   This Court should declare that if it finds that the inventorship of the

28   FURminator Family of Patents should be corrected by changing the name for

1  ownership of the patents to from the Porters to Laube that the patents then be
2  assigned to Laube.

3

4  ### **PRAYER FOR RELIEF**

5      Wherefore Plaintiffs pray for judgment as follows:

6      a.      For a declaration that United States Patent Nos. 6,782,846 (the '846
7  Patent), 7,077,076 (the '076 Patent), 7,222,588 (the '588 Patent), 7,334,540 (the
8  '540 Patent), and 7,509,926 (the '926 Patent) are invalid and/or unenforceable, in
9  whole or in part;

10     b.      For a preliminary and permanent injunction enjoining and restraining
11 Defendants, and all those acting in concert and participation therewith, from
12 engaging in the wrongful acts set forth above;

13     c.      For compensatory damages, jointly and severally against all
14 Defendants, in an amount to be proven at trial;

15     d.      For punitive damages against each Defendant in an amount to be
16 proven at trial;

17     e.      For attorneys' fees;

18     f.      For costs of suit herein; and

19     g.      For such other and further relief as justice may require.

20

21

22 Dated:  June 18, 2009         HANKIN PATENT LAW, APC

23

24                              By: _____
25                                  Marc E. Hankin
26                                  Attorneys for Plaintiffs MUNCHKIN, INC. and
                                    KIM LAUBE & COMPANY, INC.
27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand jury trial of all issues that may be tried to a jury.

Dated:  June 18, 2009                    HANKIN PATENT LAW, APC


By:  _____
       Marc Hankin
Attorneys for Plaintiffs MUNCHKIN, INC. and
KIM LAUBE & COMPANY, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV09- 4393 RSWL (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 02/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| MUNCHKIN, INC., a Delaware corporation; and KIM LAUBE & COMPANY, INC., a California corporation <br> *Plaintiff* <br><br> PORTERVISION, INC., f/k/a FURMinator, Inc., a Missouri corporation; FURMINATOR, INC.,f/k/a FM Acquisition Corp., an Indiana corporation;DAVID PORTER, an individual; ANGELA PORTER, an individual;and DOES 1 through 10, inclusive <br> *Defendant* | Civil Action No.  CV09-4393 RSWL (SSx) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  PORTERVISION, INC., f/k/a FURminator, Inc., a Missouri corporation; FURMINATOR, INC., f/k/a FM Acquisition Corp., an Indiana corporation; DAVID PORTER, an individual; ANGELA PORTER, an individual; and DOES 1 through 10, inclusive

1638 Headland Drive, Fenton, Missouri 63026

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Marc E. Hankin, Esq. (SBN: 170505)
Kevin E. Schraven, Esq. (SBN: 259446)
HANKIN PATENT LAW, APC
6404 Wilshire Boulevard, Suite 1020
Los Angeles, CA  90048

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  JUN 1 8 2009

**NATALIE LONGORIA**

*Signature of Clerk or Deputy Clerk*



1198

AO 440 (Rev. 02/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



                                                                                                        .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                     *Server's signature*

                                          _____
                                                     *Printed name and title*


                                          _____
                                                     *Server's address*

Additional information regarding attempted service, etc:

✎JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
MUNCHKIN, INC., a Delaware corporation; and KIM LAUBE & COMPANY, INC., a California corporation

**DEFENDANTS**
FURTERVISION, INC., f/k/a FURminator, Inc., a Missouri corporation; FURMINATOR, INC., f/k/aFM Acquisition Corp., an Indiana corporation; DAVID PORTER, an individual; ANGELA PORTER, an individual; and DOES 1 through 10, inclusive

(b) County of Residence of First Listed Plaintiff    Los Angeles
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Marc E. Hankin (SBN: 170505) and Kevin Schraven (SBN: 259446)
Hankin Patent Law, APC
6404 Wilshire Blvd. Suite 1020, Los Angeles, CA, 90048, (323) 944-0206

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Med. Malpractice | ☐ 625 Drug Related Seizure |    28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 365 Personal Injury - |    of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |    Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent |    Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |    Liability |    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** |    Safety/Health | | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |    Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle |    Property Damage |    Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |    Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) |    12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury | |    & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment |    Sentence | ☐ 791 Empl. Ret. Inc. |    or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** |    Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |    Accommodations | ☐ 530 General | |    26 USC 7609 |    Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |    Under Equal Access |
| |    Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | |    to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |    Alien Detainee | | ☐ 950 Constitutionality of |
| |    Other | | ☐ 465 Other Immigration | |    State Statutes |
| | ☐ 440 Other Civil Rights | |    Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. §§ 2201 and 2202
Brief description of cause:
Declaratory Relief of Patent Invalidity and Unenforceability and related Lanham Act and State Unfair Comp. Claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE
06/18/2009

SIGNATURE OF ATTORNEY OF RECORD
Marc E. Hankin, 170505

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

CV09-4393

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY — MUNCHKIN, INC. VENTURA COUNTY — KIM LAUBE & COMPANY | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | MISSOURI |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
      **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):   _Marc E. Hankin_   Date   _JUNE 18, 2009_
                                           170505

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |